UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

WHITEHEAD FARMS, *et al.*,                )
                                          )
          Plaintiffs,                     )
                                          )
v.                                        )          Case No. 2:17-cv-00168-DPM
                                          )
MONSANTO COMPANY, *et al.*,               )
                                          )
          Defendants.                     )

**DEFENDANT MONSANTO COMPANY'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs are farmers who allege their crops were damaged by the off-target movement of certain dicamba-based herbicides that were applied to nearby fields by unidentified applicators. Compl. ¶¶ 41-42. However, Plaintiffs concede that the allegedly injury-causing dicamba herbicide was not manufactured, distributed, or sold by Monsanto. Compl. ¶¶ 35-36. Indeed, Plaintiffs admit that Monsanto's dicamba herbicide product, XtendiMax® with VaporGrip® Technology ("XtendiMax"), was not approved for use in Arkansas. Compl. ¶ 35.

Plaintiffs argue that the established limits of products liability – which prevent product manufacturers from being held liable for harms caused by other companies' products – may be evaded simply by redefining a separately-sold, injury-producing product as only one part of a product "system" that also includes the separately-sold, but non-injury-producing product of another manufacturer. They cannot. Plaintiffs' position is devoid of legal precedent; moreover, it would improperly expand the scope of products liability to expose product manufacturers to near limitless liability for harms caused by any number of other products that might foreseeably be used in combination with their own. Not only would seed manufacturers become liable for

allegedly defective herbicides, car manufacturers would become liable for defective bicycle racks and trailers, gun manufacturers would become liable for defective bullets, and canoe manufacturers would become liable for defective life jackets. That is not the law. The Court should reject Plaintiffs' proposed revision of Arkansas product liability law and dismiss their claims against Monsanto with prejudice.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST MONSANTO SHOULD BE DISMISSED FOR LACK OF CAUSATION.

Plaintiffs seek to impose liability on Monsanto for harms allegedly caused by defects in, or the misuse of, dicamba herbicides that Plaintiffs admit Monsanto did not manufacture, distribute or sell. Arkansas product liability law prohibits that result. In order to meet the burden of establishing proximate causation, Arkansas law requires Plaintiffs to prove "that the actual product manufactured or distributed by the defendant caused injury to the plaintiff." *Fields v. Wyeth, Inc.*, 613 F. Supp. 2d 1056, 1060 (W.D. Ark. 2009) (citing *Chavers v. General Motors Corp.*, 349 Ark. 550, 563 (2002)). Plaintiffs cannot meet this proximate causation requirement as to Monsanto, because they admit that Monsanto did not manufacture, distribute or sell the dicamba herbicides that caused their alleged injuries.

Plaintiffs attempt to overcome this fatal deficiency in their claims against Monsanto by arguing that the dicamba herbicides that allegedly caused their injuries were not separate products, but part of a larger product – a "crop system" – that they claim also included seeds sold by Monsanto. *See* Pls' Resp. Mot. to Dismiss at 3 (asserting Plaintiffs' alleged crop damage was "caused by [Monsanto's] actions related to the entirety of its defective crop system"). But "artful pleading simply cannot be used to circumvent th[e] requirement [that the actual product manufactured or distributed by the defendant caused injury to the plaintiff]." *Fields*, 613 F.

Supp. 2d at 1060.  Under Arkansas law, the fact that two separate products are capable of being used together does not convert them into a single product for purposes of product liability, or make the manufacturer of one product liable for injuries caused by the other manufacturer's product.  Because Monsanto did not manufacture, distribute or sell the dicamba herbicides that allegedly caused damage to Plaintiffs' crops, Plaintiffs' claims against Monsanto should be dismissed with prejudice.

## A.      Causation is Required for Every Claim Brought by Plaintiffs.

In their Response, Plaintiffs state that "Monsanto's Brief contains its causation argument which appears to only address Plaintiffs' strict products liability claim."   Pls.' Resp. to Mot. to Dismiss at 3 (Doc. # 35).  Not so.  Proximate cause is an essential element of all six causes of action asserted by Plaintiffs.  *See* Ark.Code Ann. § 4–116-101(a) (requiring plaintiffs to prove that "[t]he defective condition was a *proximate cause* of harm to a person or property" for **strict liability claims**) (emphasis added); *White v. Volkswagen Grp. of America, Inc.*, 2013 WL 685298 at *6 (W.D. Ark. Feb. 25, 2013) (granting motion to dismiss **strict liability** and **negligence** counts for lack of proximate causation) (emphasis added); *E.I. Du Pont de Nemours and Co. v. Dillaha,* 659 S.W.2d 756, 757-58 (Ark. 1983) (holding to recover for breach of an **implied warranty**, the plaintiff must prove the unfitness or unmerchantable condition "was a proximate cause of plaintiff's damages") (emphasis added); Ark.Code Ann. § 4–88–113(f) (grants a private cause of action under the **ADTPA** to "[a]ny person who suffers actual damage or injury *as a result of* an offense or violation as defined in this chapter") (emphasis added); *Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 406 (Ark. 2002) ("A **civil conspiracy** is not actionable in and of itself, but a recovery may be had for *damages caused by acts committed pursuant to the conspiracy.*") (emphasis added). Thus, ***all of Plaintiffs' claims*** against Monsanto

fail for lack of causation, as Monsanto did not manufacture, distribute or sell the dicamba herbicides that allegedly caused the damage to Plaintiffs' crops.

**B.      Plaintiffs Cannot Allege Causation Because Monsanto Did Not Manufacture, Distribute or Sell the Dicamba Herbicide That Caused Their Alleged Injuries.**

Plaintiffs' entire proximate cause argument is based on the incorrect premise that they can hold Monsanto liable for damage allegedly caused by dicamba herbicides it did not design, manufacture or sell, simply because those herbicides could be used with crops grown from seeds sold by Monsanto. But Plaintiffs have not cited a single case holding that a product manufacturer can be held liable for injuries caused by a product it did not manufacture, distribute or sell solely because that product is capable of being used with the manufacturer's own products. Rather, as courts across the country have held: "A fundamental principle of products liability law is that 'a plaintiff must prove, as an essential element of his case, that the defendant manufacturer actually made the particular product which caused the injury.'" *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 515 (D.N.J. 2002); *Gray v. United States*, 445 F. Supp. 337, 338 (S.D. Tex. 1978) (same); *Bradley v. Firestone Tire & Rubber Co.*, 590 F.Supp. 1177, 1179 (D.S.D. 1984) (same). This requirement applies regardless of the liability theory asserted. 51 A.L.R.3d 1344, 1351 §3.

Arkansas law similarly requires a plaintiff to prove the defendant manufactured, distributed, or sold the product that caused the plaintiff's injury in order to establish causation. "'A basic requirement of products-liability actions under Arkansas law is product identification, *i.e.,* that the actual product manufactured or distributed by the defendant caused injury to the plaintiff.'" *Fields*, 613 F. Supp. 2d at 1060; *Fullington v. Pfizer, Inc.*, 2010 WL 3632747, at *1 (E.D. Ark. Sept. 17, 2010), *aff'd* 720 F.3d 739 (8th Cir. 2013) (citing *Fields*, 613 F. Supp. 2d at

- 4 -

1060); *Bell v. Mine Safety Appliances*, 2016 WL 797582, at \*3 (W.D. Ark. Feb. 26, 2016) ("'Before [a defendant] can be held liable for causing an injury, the [plaintiff] must establish that the [defendant's] product was actually used.'"); *Burns v. Universal Crop Protection Alliance*, 2007 WL 2811533, \*2-3 (E.D. Ark. Sept. 25, 2007) (Arkansas law requires plaintiffs alleging crop damage from 2,4-D herbicide to "show that a specific [2,4-D herbicide] product manufactured by a specific defendant caused injury to a particular plaintiff's cotton crop"). In fact, the Arkansas Supreme Court has held that a plaintiff in a product liability case is "required to prove" that the plaintiff was injured by a particular product "made by [the defendant]." *See Chavers*, 79 S.W.3d at 369 (Ark. 2002). Relying on *Chavers*, the Eighth Circuit has explained that "to prove her product liability claims under Arkansas law, [the plaintiff] must show that a product manufactured or distributed by the ... defendants caused her injuries." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1092 (8th Cir. 2013).

Here, Plaintiffs do not allege that Monsanto manufactured the dicamba herbicides that allegedly damaged their crops. Rather, Plaintiffs allege that farmers were damaged by dicamba herbicides manufactured by BASF, or by other unidentified manufacturers of other dicamba herbicides. *See* Compl. ¶¶ 19, 35, 36. Additionally, in an attempt to salvage their claims against Monsanto, Plaintiffs contend their alleged crop damage was caused, not just by the other companies' dicamba herbicides that allegedly moved off-target and damaged their crops, but by a larger "crop system" that included *both* those companies' herbicides *and* Monsanto's Xtend seeds. *See* Pls' Resp. to Mot. to Dismiss. at 3-4. But again, while Plaintiffs argue that "[c]rop damage is the 'natural and probable consequence of' selling a defective dicamba crop system," Pls.' Resp. to Mot. to Dismiss at 4, they also acknowledge Monsanto did not sell a "dicamba crop system" in Arkansas. *See* Compl. ¶ 35. Plaintiffs' effort to save their claims by

- 5 -

mischaracterizing the injury-producing product as a "crop system" that included Monsanto's Xtend seeds fails. Accordingly, under settled Arkansas law, Plaintiffs cannot establish that Monsanto was the proximate cause of their injuries, an essential element of all of their claims.

**C.     Plaintiffs Cannot Allege Proximate Causation For Any Claim for Crop Damage Before 2017 Because the Intervening Illegal Use of Dicamba Herbicides By Third Parties Is a Superseding Cause of Plaintiffs' Injuries.**

In their Complaint and Response, Plaintiffs fail to clarify in which years their alleged damage occurred. As shown in Monsanto's opening brief, any in-crop application of any dicamba herbicides to crops grown from Monsanto's Xtend seeds in 2015 and 2016 was illegal. Therefore, to the extent Plaintiffs assert claims for alleged dicamba damage to their crops before 2017, those claims should be dismissed for the additional reason that the alleged damage was caused, not by Monsanto, but by the intervening and superseding illegal use of dicamba herbicides by third parties.

Plaintiffs argue that "'where there are both a design defect and misuse of the product, each of which contribute to an accident, the misuse does not become an intervening cause if the misuse was foreseeable.'" Pls.' Resp. to Mot. to Dismiss at 5 (quoting *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 195 (8th Cir. 1981)). But in *Vanskike*, the Eighth Circuit recognized that a misuse may not qualify as an intervening cause only if the misuse was foreseeable by the ***manufacturer or designer*** of the product causing the alleged harm. *See id.* at 195-96. Here, Monsanto is not the manufacturer or designer of the allegedly injury-causing dicamba herbicides, and thus, is not responsible for the alleged damages caused by the misuse of another manufacturer's dicamba herbicides, foreseeable or not. Furthermore, Monsanto placed

- 6 -

labels on every bag of Xtend seed it sold in 2015 and 2016, expressly warning against the illegal application of dicamba herbicides.[1] *See* Def.'s Mem. Supp. Mot. to Dismiss at 6 (Doc. #22).

Earlier this year, the Eastern District of Missouri addressed this very issue.  The court in *Bader Farms, Inc. v. Monsanto Co.*, ruled that "even if Monsanto was negligent in its release of the GE seeds without a corresponding [dicamba] herbicide … its conduct was simply too attenuated to establish proximate cause." 2017 WL 1315792, *3 (E.D. Mo. April 10, 2017), *vacated as moot*.[2]  The Court ruled that Monsanto was not the proximate cause of Plaintiffs' alleged injuries because "plaintiffs' injuries stem directly from an intervening and superseding cause – the unforeseeable independent acts by the third-party farmers who unlawfully sprayed dicamba on their crops." *Id*.

Plaintiffs here attempt to save their 2015 and 2016 claims by arguing that the application of dicamba herbicides to crops grown from Xtend seeds was foreseeable to Monsanto, despite its illegality. *See* Pls.' Resp. at 4-5 (Doc. # 35).  But the *Bader Farms* court ruled that Monsanto's product labeling foreclosed that argument. Explaining the basis for its intervening and superseding cause finding, the court stated: "To the extent that the third-party farmers' unlawful

---

[1] Plaintiffs contend that Monsanto improperly asks the Court to look outside the Complaint by including necessary background information in its Brief and by attaching a copy of its warning label to its Motion.  However, the court may consider "materials embraced by the pleadings and materials that are part of the public record." *Detroit Gen. Retirement Sys. v. Medtronic, Inc.*, 621 F.3d 800, 805 (8th Cir. 2010); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). *See* Compl. ¶¶ 32-40.  Additionally, the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  For example, this Court has held that actions of the Arkansas State Plant Board are subject to judicial notice. *See, e.g., RM Dean Farms v. Helena Chem. Co.*, 847 F. Supp. 2d 1125, 1127 n.2 (E.D. Ark. 2012) (taking judicial notice that "the Plant Board has promulgated regulations on the sale of planting seed in Arkansas and that Helena Chemical Company is a licensed dealer").

[2] The *Bader Farms* Court later vacated its ruling as moot, after granting Plaintiffs leave to file an amended complaint to allege that a Monsanto representative instructed a specific farmer who farmed in the same county as Bader Farms to make illegal applications of dicamba.  Plaintiffs do not make comparable allegations here. While Plaintiffs do allege generally that unidentified Monsanto representatives encouraged unidentified farmers in unidentified locations to make illegal applications of dicamba herbicides, those allegations are insufficient to avoid dismissal of their claims. Plaintiffs do not specifically allege that Monsanto directed any illegal application of any dicamba that allegedly caused damage to any particular Plaintiff's crops.

conduct was at all foreseeable because dicamba was an available herbicide and the new GE seeds were dicamba-resistant, *that foreseeability was wholly negated by the GE seeds' product warning labels, prominently highlighted on all bags of cotton and soybeans sold.*" *Id.* (emphasis added).   Therefore, to the extent Plaintiffs assert claims for alleged dicamba damage to their crops before 2017, those claims should be dismissed because the alleged damage was not caused by Monsanto, but by the intervening and superseding illegal use of dicamba herbicides by a third party.

Plaintiffs incorrectly assert that the two key cases Monsanto cites in support of its intervening and superseding cause argument are irrelevant. Pls.' Resp. to Mot. to Dismiss at 5. First, in *Ashley County, Arkansas v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009), the Eighth Circuit held that illegal misuse of a product is an intervening and superseding cause even where such use is foreseeable.  The Court specifically held that "[t]he criminal actions of the methamphetamine cooks and those further down the illegal line of manufacturing and distributing methamphetamine are 'sufficient to stand as the cause of the injury'" despite allegations that the defendant drug manufacturers could not only foresee, but actually knew, that their products were being purchased and used illegally to make methamphetamine.  552 F.3d 659, 669-70 (8th Cir. 2009).

Plaintiffs argue that *Ashley County* is not applicable because "[c]old medicine is not designed to be used as meth," while "Xtend beans beg for use in conjunction with dicamba." Pls.' Resp. to Mot. to Dismiss at 5.  Contrary to Plaintiffs' argument, in finding Pfizer did not proximately cause the alleged injuries, the *Ashley County* court was not concerned with how or why the cold medicine was designed, but rather, focused on the subsequent illegal acts of the third parties (*i.e.,* methamphetamine cooks and distributors). *See id.* at 670 (citing *City of Gary*

- 8 -

*ex rel. King v. Smith & Wesson Corp.,* 801 N.E.2d 1222, 1244 (Ind. 2003) ("As a matter of law, in the absence of other facts, it is not a natural and probable consequence of the lawful sale of a handgun that the weapon will be used in a crime.")). Notably, Monsanto's position is even more remote than Pfizer's because Monsanto is alleged only to have manufactured seeds that were grown into crops to which the herbicide was illegally applied – not to have manufactured the illegally used herbicide itself.

Second, Plaintiffs incorrectly state *Walton v. Sherwin Williams*, 191 F.2d 277 (applying Arkansas law) (8th Cir. 1951) is not relevant, as it only addressed imputed liability for the acts of an independent contractor. *See* Pls.' Resp. to Mot. to Dismiss at 5. However, the similarities between Plaintiffs' allegations and those in *Walton* are striking. Like Plaintiffs here, the *Walton* plaintiffs asserted 2,4-D was unfit for its intended purpose and "also alleged that the ***manufacturer was negligent*** ... in failing to use reasonable care to give adequate instructions and directions as to the preparation and use of [2,4-D]." *Id.* at 280 (emphasis added). The Eighth Circuit held that the third-party applicator's failure to use ordinary care in the application of an herbicide "presents a sufficient and proximate intervening cause of the [resulting crop] damage which would afford complete defense to the defendant [herbicide manufacturer]." *Id.* at 283. Again, Monsanto's position in this case is even stronger than the manufacturer's position in *Walton* because (i) Monsanto did not even manufacture the herbicide that allegedly caused Plaintiffs' damage; and (ii) Plaintiffs concede the application here was not merely a negligent application by a third-party, but actually an illegal application by the third-party applicator that allegedly caused the damage during the 2015 and 2016 growing seasons. The presence of an intervening and superseding cause for the 2015 and 2016 crop years is readily apparent here. Plaintiffs' claims for 2015 and 2016 crop damage should therefore be dismissed, with prejudice.

## II.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE MONSANTO DID NOT OWE A DUTY TO PREVENT PLAINTIFFS' ALLEGED INJURIES.

### A.  As a Matter of Law, Monsanto Did Not Have a Duty to Prevent Harms Caused by Herbicides It Did Not Manufacture, Distribute or Sell.

Plaintiffs' claims against Monsanto also should be dismissed for lack of duty. In their response brief, Plaintiffs merely reiterate the duties they allege Monsanto breached. Rather than citing case law in support of their arguments, Plaintiffs attempt to extend liability to Monsanto by labeling Monsanto's product as a "system" that also includes products manufactured by other companies. *See* Pls.' Resp. to Mot. to Dismiss at 5. But, as expressly alleged in Plaintiffs' Complaint, Monsanto only manufactured and distributed Xtend seeds, and the harm alleged by Plaintiffs was caused by the application by unidentified third-parties of dicamba herbicides manufactured by companies other than Monsanto.

As a general rule, product manufacturers do not owe a duty of care to prevent harms caused by the products of other manufacturers. *See, e.g., Foster v. American Home Prods. Corp.*, 29 F.3d 165, 171 (4th Cir. 1994) ("As Wyeth has no duty to the users of other manufacturers' products, a negligent misrepresentation action cannot be maintained against it on the facts of this case."). That is true even with respect to products that foreseeably may be used with the manufacturer's own product. *See Ford v. Traditional Sporting Goods, Inc.*, 2006 W: 1582082, *2 (W.D. Ark. June 2, 2006) (manufacturer of gunpowder "had no duty to warn Plaintiffs that the otherwise safe [gunpowder] would be dangerous when used in connection with a [particular type of rifle]").

Where, as here, the plaintiff's alleged injury was caused by another company's separate product that was used jointly with (but not incorporated into) the defendant's product, courts

have consistently held that the defendant is not liable for the harms caused by the other company's product. As one federal court observed:

> [T]he court can find no case law that supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchaser may or may not use to complement the product bought from the manufacturer.
>
> For example, if a customer buys a car from a manufacturer that does not manufacture or install bicycle roof racks, is the car manufacturer under a duty to (1) warn the customer of all potentially defective brands of roof racks and (2) suggest which brand of roof racks it believes are the safest? If the manufacturer doesn't "warn and suggest," is it liable for damage caused by a defective roof rack purchased by the customer? What if the manufacturer does "warn and suggest" and the customer disregards this advice, is the manufacturer shielded from liability? Or was the manufacturer required to follow-up to ensure the customer followed its advice? Plaintiffs offer no cases, treatises or answers to these questions. The court refuses to blaze a new trail unaided by some law or common sense, neither of which plaintiffs have provided.

*In re Deep Vein Thrombosis,* 356 F. Supp. 2d 1055, 1068 (N.D. Cal. 2005).

Courts across the country have held that a manufacturer does not have a duty to prevent injuries caused by the separate product of another manufacturer, even if that product foreseeably may be used with the manufacturer's own products. *See, e.g., Firestone Steel Prods. Co. v. Barajas,* 927 S.W.2d 608, 616 (Tex. 1996) ("A manufacturer does not have a duty to warn or instruct about another manufacturer's products, *though those products might be used in connection with the manufacturer's own products.*") (emphasis added); *Barnes v. Kerr Corp.,* 418 F.3d 583, 590 (6th Cir. 2005) (finding no duty to warn of dangers of mercury combined with other products, stating: "Although a product manufacturer generally has a duty to warn of the dangers of its own products, it does not have a duty to warn of the dangers of another manufacturer's products."); *Westchem Agr. Chemicals, Inc., v. Ford Motor Co.,* 990 F.2d 426, (8th Cir. 1993) ("Ford did not have a duty to warn regarding the dangers arising from the

improper installation of the aftermarket electrical equipment in this case."); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1371 (S.D. Fla. 2012) ("In short, a manufacturer's duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from *other* manufacturer's products, *regardless of the foreseeability of the combined use and attendant risk.*") (second emphasis added); *Simonetta v. Viad Corp.*, 197 P.3d 127, 137 (Wash. 2008) ("We … conclude that *even if Viad knew its evaporator was being used in conjunction with asbestos insulation*, our precedent does not support extending strict liability for failure to warn to those outside the chain of distribution of a product.") (emphasis added). For example, in refusing to hold the manufacturer of a gas oven liable for injuries allegedly caused by defective tubing used with the oven, one court explained:

> The use of any product can be said to involve some risk because of the circumstances surrounding even its normal use.  Nonetheless, the makers of such products are not liable, under any theory, for merely failing to warn of injury which may befall a person who uses that product in an unsafe place *or in conjunction with another product which because of a defect or improper use is itself unsafe.*

*Garman v. Magic Chef, Inc.*, 173 Cal. Rptr. 20, 23 (Cal. Ct. App. 1981) (emphasis added).

Plaintiffs cite no case law to support the existence of a duty owed to them by Monsanto, and they have no response to the body of case law presented by Monsanto.[3]  Because Monsanto did not have a legal duty to protect Plaintiffs from harms allegedly caused by other manufacturers' products, Plaintiffs' claims against Monsanto should be dismissed with prejudice.

---

[3] Plaintiffs cite to Section 16-116-101(b) to argue Monsanto owes a duty to those other than purchasers of its products. *See* Pls.' Resp. to Mot. to Dismiss at 7.  Specifically, Plaintiffs claim they can hold Monsanto liable because liability applies "although the claiming party has not obtained the product from or entered into any contractual relation with the supplier." *See* Ark.Code Ann. § 16–116-101(a). This argument misses the point. Here, Monsanto did not manufacture, distribute, or sell the product that allegedly caused harm.

### B.   Plaintiffs' Partnership/Joint Venture Argument is Without Merit.

In another effort to circumvent the clear defects in their direct claims against Monsanto, Plaintiffs argue they can hold Monsanto liable for their alleged herbicide injuries by claiming the "nature of the relationship" between BASF and Monsanto constitutes a joint partnership and venture between Monsanto and BASF. *See* Pls.' Resp. to Mot. to Dismiss at 6 ("Creation of dicamba products, including the defective crop system, is a joint partnership and venture between the Defendants herein."). Plaintiffs are wrong for multiple reasons.

First, conclusory allegations that Monsanto and BASF "partnered or cooperated" on certain projects are insufficient to allege partnership liability. *See Courtney v. Courtney*, 752 S.W.2d 40, 41 (Ark. 1988) (affirming trial court's finding that plaintiff's testimony consisting of "conclusory assertions that [plaintiff] and his father worked together as partners" was insufficient to prove a partnership).[4] Here, Plaintiffs have merely alleged that "BASF cooperates and joint ventures with Monsanto in research, development, and marketing of herbicides and weed control products." Compl. ¶ 10. Plaintiffs' conclusory assertions are insufficient to plead a joint venture.

Second, the agreement between Monsanto and BASF referenced in the Complaint is a licensing agreement, not a partnership agreement. Compl. at ¶ 10 (Doc #2). As several courts have recognized, entering into a licensing agreement is different from establishing a legal partnership. *St. Louis, A. & T.R.R. Co. v. Neel*, 19 S.W. 963 (Ark. 1892) (license agreement did not create a partnership); *Hillard v. Roc-Newark Assocs.*, 287 A.D.2d 691, 693 (N.Y. Super. 2001) (license agreement did not create partnership or joint venture). Entering into a licensing

---

[4] *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Dole v. USA Waste Servs., Inc.*, 100 F.3d 1384, 1387 (8th Cir. 1996) (North Dakota law) (conclusory assertions were insufficient to show a joint venture).

agreement does not make the licensor liable for acts of the licensee. *See Maruho Co., Ltd. v. Miles, Inc.*, 13 F.3d 6, 11 (1st Cir. 1993) (holding that licensing agreement did not make licensor liable for the acts of its licensee with respect to a third party); *In re TMJ Implants Prods. Liab. Litig.*, 880 F.Supp. 1311, 1321 (D. Minn. 1995) (holding that "[w]ithout proof of a greater undertaking by the trademark owner, no duty to third parties arises out of [a] trademark licensing agreement"); *L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F.Supp. 1294, 1299 (C.D. Cal. 1994) ("trademark license agreements do not in and of themselves create an agency relationship"). Monsanto is not liable for the acts of BASF under a partnership or joint venture theory.

III.   **CERTAIN OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS.**

A.   **Plaintiffs' Arkansas Deceptive Trade Practices Act Claim Should Be Dismissed Because it is Barred by the Statute's Safe Harbor Provision.**

Plaintiffs' claim for violation of the Arkansas Deceptive Trade Practices Act fails because the sale of genetically modified seeds in Arkansas falls within the statute's safe harbor provision. More specifically, the ADTPA does not apply to "[a]ctions or transactions *permitted under laws administered by* the Insurance Commissioner, the Securities Commissioner, the State Highway Commission, or Bank Commissioner, or *other regulatory body or officer acting under statutory authority of this state or the United States*[.]" A.C.A. § 4-88-101(3) (emphasis added). Because APHIS permitted the sale of Xtend seeds in 2015, the ADTPA does not apply.

Plaintiffs correctly note the Arkansas Supreme Court recently held that the safe harbor provision of the ADTPA should be applied according to the specific-conduct rule, rather than the general-activity rule. *Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 2017 Ark. 368 (Dec. 14, 2017). Under the general-activity rule, courts look to whether a regulatory body of Arkansas or the United States regulates the conduct at issue. *Id.* at *4. If the conduct is regulated, the party

- 14 -

enjoys a full exemption from the ADTPA. *Id.* Under the specific-conduct rule, courts look to whether state law (or a regulatory body acting under statutory authority of the United States) permits or prohibits the conduct at issue. *Id.* If the conduct is specifically permitted, the party is exempted from the ADTPA when engaging in that particular conduct. *Id.*

Even under the specific-conduct rule, Monsanto's challenged conduct – the sale of Xtend seeds in Arkansas – comes squarely within the statute's safe harbor provision because The U.S. Department of Agriculture's ("USDA") Animal and Plant Health Inspection Service ("APHIS"), a regulatory body acting under statutory authority of the United States, specifically permitted Monsanto to sell Xtend seeds beginning in 2015. On January 14, 2015, APHIS determined from its Plant Pest Risk Assessments that MON 87708 soybean and MON 88701 cotton (the new dicamba-tolerant traits introduced into Xtend cotton and soybean seeds) were unlikely to pose a plant pest risk, and granted the petitions for nonregulated status, effective January 20, 2015. *See* APHIS Record of Decision re: Monsanto Petitions 10-188-01p and 12-185-01p at 6 (Jan. 14, 2015).[5] Thus, the specific-conduct safe harbor provision is satisfied, and Plaintiffs' ADTPA claims should be dismissed with prejudice.

**B.  Plaintiffs' Civil Conspiracy Claim Should Be Dismissed for Failure to Plead Facts Showing a Meeting of the Minds for an Unlawful Purpose.**

Plaintiffs' civil conspiracy claim should be dismissed because Plaintiffs have failed to allege with sufficient particularity the details of the alleged agreement or meeting of the minds between Monsanto and Xtend seed purchasers. In their Complaint, Plaintiffs claim that, in engaging in the conspiracy, Monsanto and the purchasers of Xtend seed sought to "corner the market for genetically modified soybeans and cotton such that farmers in Arkansas would have

---

[5] *See* 7 C.F.R. §§ 340.0(a) & n. 1, 340.1 (stating GE seeds cannot be sold in the U.S. unless they are specifically permitted for sale by APHIS).

no choice but to purchase Monsanto's Xtend seeds." Compl. ¶¶ 85-86 ("[Monsanto] conspired with purchasers of Monsanto's Xtend seeds for the purchasers to illegally spray dicamba on the Xtend seeds."). Perhaps recognizing the absurdity of that argument, Plaintiffs in their Response now argue instead that a conspiracy exists between BASF and Monsanto. *See* Pls.' Resp. to Mot. to Dismiss at 8. That conspiracy theory is not alleged in the Complaint and should be ignored. But even if that theory were alleged as described in Plaintiffs' brief, which it is not, it would be insufficient as a matter of law too.

Regardless of which conspiracy theory Plaintiffs are now attempting to pursue, Plaintiffs fail to allege specific facts demonstrating a "meeting of the minds" between Monsanto and its alleged co-conspirators (either BASF or Xtend seed purchasers) to achieve an unlawful objective. The law is clear that, without specific facts demonstrating a "meeting of the minds" among the conspirators, Plaintiffs' cannot state a claim upon which relief can be granted. *See Landers v. Monsanto Co.*, 2017 WL 3531378 at *6 (E.D. Mo. Aug. 17, 2017) (dismissing conspiracy claim for failure to sufficiently plead unlawful objective and meeting of the minds); *see also Garrison v. RevClaims, LLC*, 247 F. Supp. 3d 987, 990 (E.D. Ark. 2017) ("Conspiracy allegations must be supported with sufficient specificity and facts for a court to find a meeting of the minds").

Plaintiffs contend circumstantial evidence can be used to show conspiracy. They miss the point. There is no allegation – circumstantial or otherwise – that shows Monsanto and the purchasers (or Monsanto and BASF as Plaintiffs now claim in their response brief) had a meeting of the minds whereby they agreed to pursue an unlawful objective. *See Garrison*, 247 F. Supp. 3d at 990. Furthermore, Plaintiffs claim that "Monsanto, through its agents and representatives, encouraged and directed its purchasers to illegally spray dicamba-based

- 16 -

herbicides on the Xtend seeds." Compl. ¶ 87. First, there is no specificity with respect to this broad, general allegation. Plaintiffs must allege the "who, what, when, where, and why" of the conspiracy and have failed to do so. *See, e.g., Bootheel Ethanol Invs., L.L.C. v. SEMO Ethanol Coop.*, 2009 WL 398506, *5 (E.D. Mo. Feb. 17, 2009) (quoting *Carhart v. Smith*, 178 F. Supp. 2d 1068, 1075 (D. Neb. 2001) (same)), citing *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992)) ("The usual liberal requirements of notice pleading are not applicable when conspiracy claims are raised."). Furthermore, alleged encouragement and direction alone is not enough to demonstrate that Monsanto and the Xtend seed purchasers had a meeting of the minds to pursue an unlawful objective. *See Landers,* 2017 WL 3531378 at *6 (dismissing conspiracy claim for failure to sufficiently plead unlawful objective and meeting of the minds where plaintiffs alleged "[Monsanto] encouraged and directed its purchasers to illegally spray dicamba on the GE seeds"); *see also Garrison*, 247 F. Supp. 3d at 990. The facts alleged in the Complaint do not support the existence of a meeting of the minds to engage in a conspiracy.

## C.     The Non-Arkansas Farmers Are Not Proper Putative Class Members.

Monsanto raised its argument that the claims asserted on behalf of the non-Arkansas putative class members should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) for preservation purposes in the unlikely event that the case survives until class certification briefing. Plaintiffs contend Monsanto failed to develop this argument. Apparently, Plaintiffs misunderstand the simplicity of Monsanto's personal jurisdiction argument: First, under the United States Supreme Court decision in *Daimler v. AG Bauman*, Arkansas does not have general jurisdiction over Monsanto. *See Daimler v. AG Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."). Second, Monsanto is not subject to specific

- 17 -

jurisdiction in Arkansas as to the claims of non-Arkansas putative class members because such claims are not alleged to have arisen out of any conduct of Monsanto within the State of Arkansas. Monsanto will submit additional briefing on personal jurisdiction if the case survives until class certification.

Additionally, Plaintiffs' unsupported contention that *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S,Ct, 1773 (2017) does not apply to class actions is wrong and ignores the weight of authority to have addressed this issue. *See McDonnell v. Nature's Way Products, LLC,* 2017 WL 4864910, at *4-5 (dismissing "claims on behalf of prospective class members" "[b]ecause the only connection to Illinois is that provided by [the named class plaintiff's] purchase of [the challenged product]" and that "cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents"); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class.") (citing *Bristol-Myers Squibb Co. v. Superior Court of Cal.,* 137 S.Ct. 1773 (2017)); *Spratley v. FCA US LLC*, 2017 WL 4023348, at *6-8 (N.D.N.Y. Sept. 12, 2017) (dismissing claims of out-of-state plaintiffs and putative class members because their claims lacked a connection to the New York forum); *In re Dental Supplies Antitrust Litig.,* 2017 WL 4217115, at 8 9 (E.D.N.Y. Sept 20, 2017) ("The constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case.").

## CONCLUSION

For the foregoing reasons, all of the claims against Monsanto should be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
Edwin L. Lowther, Jr. (81107)
Scott A. Irby (99192)
200 W. Capitol Ave.
Suite 2300
Little Rock, Arkansas 72201
501-371-0808
FAX 501-376-9442
Email: sirby@wlj.com
elowther@wlj.com

By: /s/ *Scott A. Irby*
      Edwin L. Lowther, Jr. (81107)
      Scott A. Irby (99192)

AND

A. Elizabeth Blackwell, # 50270MO
Jeffrey A. Masson, #60244MO
Daniel C. Cox, #38902MO
Jan Paul Miller, #58112MO
Christopher M. Hohn, #44124MO
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
Email: eblackwell@thomsponcoburn.com
jmasson@thompsoncoburn.com
dcox@thompsoncoburn.com
jmiller@thompsoncoburn.com
chohn@thompsoncoburn.com

**Attorneys for Defendant Monsanto Company**

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ *Scott A. Irby*
Scott A. Irby